## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MICHAEL SIEG and** | : | **No. 3:10cv606** |
| **DEANNA SIEG,** | : | |
| **Plaintiffs** | : | **(Judge Munley)** |
| | : | |
| **v.** | : | |
| | : | |
| **SEARS ROEBUCK & COMPANY** | : | |
| **and LEVITON MANUFACTURING** | : | |
| **COMPANY,** | : | |
| **Defendants** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **PRIMAX ELECTRONICS, LTD.,** | : | |
| **Third-Party Defendant** | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## <u>MEMORANDUM</u>

Before the court is Third-Party Defendant Primax Electronics' motion to dismiss Defendant / Third-Party Plaintiff Leviton Manufacturing's third-party complaint.  (Doc. 31).  Primax moves to dismiss pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure.  The issues have been fully briefed and the matter is ripe for disposition.  For the following reasons, the court will dismiss Third-Party Defendant Primax Electronics pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction.

**Background**

This case arises from a November 17, 2008 fire in Plaintiff Michael Sieg and Plaintiff Deanna Sieg's (collectively "plaintiffs") Schuylkill County Pennsylvania home.  (Doc. 20, Am. Compl. ¶¶ 1, 7).  The fire damaged plaintiffs' home and both plaintiffs suffered injuries and were treated at the Good Samaritan Hospital.  (Id. ¶¶ 8, 14-15).  Plaintiffs filed a complaint in the Dauphin County Court of Common Pleas against Defendant Sears Roebuck & Company (hereinafter "Sears") and Defendant Leviton Manufacturing (hereinafter "Leviton").  (See Doc. 1-3, Compl.).  Plaintiffs allege that a defective power tap caused the fire.  (Doc. 20, Am. Compl. ¶ 7).  Plaintiffs claim to have purchased the allegedly defective power tap from a Sears retail store in 2008, and that the power tap was either manufactured or distributed by Leviton.  (Id. ¶ 6).  Plaintiffs assert that Sears and Leviton are both liable under theories of strict liability and negligence.  (Id. ¶¶ 16-21).

On March 18, 2010, Leviton filed a notice of removal with this court pursuant to 28 U.S.C. § 1446.  (See Doc. 1, Notice of Removal).  Plaintiffs filed an amended complaint against Leviton and Sears on August 27, 2010.  (See Doc. 20).  Shortly thereafter, Leviton filed a third-party complaint against Primax Electronics (hereinafter "Primax").  (See Doc. 22).  Primax is a

Taiwan-based corporation with manufacturing and research operations in Taiwan and China.  (See Doc. 35-5, Ex. D, Primax Co. Profile).  Primax engages in the design, manufacture and distribution of consumer electronics. (Id.; Doc. 22, Third-Party Compl. ¶ 2).  With its operations overseas, Primax has no employees, offices, property or other assets in Pennsylvania.  (Doc. 34-1, Ex. A, Hwang Decl. ¶¶ 4-6).  Primax sells its products Free on Board ("F.O.B.") China or Taiwan and claims to be uncertain of where its customers take its products from there.  (Id. ¶ 7).  Primax has not paid taxes to Pennsylvania and it is not registered as a corporation in Pennsylvania.  (Id. ¶¶ 8-9).

Primax does, however, have a presence in the United States.  It opened its first United States sales office in 1990.  (Doc. 35-5, Ex. D, Primax Co. Profile).  Primax has sold thousands of products to Leviton.  (See 35-6, Ex. E, Purchase Order).  These products were sent F.O.B. Taiwan and shipped to California.  (Id.)  The purchase order indicates a New York billing address and that Leviton and Primax consented to New York City courts as the forum for legal dispute.  (Id.)  Primax also has appeared in lawsuits initiated in the Courts of Common Pleas of Lehigh and Bucks Counties in 2002 and 2003 respectively.  (See Doc. 35-4, Ex. C, Dockets & Pleadings).

3

Leviton contends that Primax was the manufacturer of the power tap at issue in this case, and that if Leviton is found to be liable, Primax should be liable over Leviton.  (Doc. 22, Third-Party Compl. ¶¶ 4-6).  Primax filed a motion to dismiss the third-party complaint pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure.  (See Doc. 31).  Primax contends that this court does not have personal jurisdiction to proceed with the third-party complaint, and, even if this court possesses personal jurisdiction over Primax, Leviton's third-party complaint fails to state a claim for which relief can be granted.

**Legal Standard to Establish Personal Jurisdiction**

The plaintiff must adduce facts sufficient to satisfy two requirements–one statutory and one constitutional–to establish personal jurisdiction.  The statutory prong requires that the court assess whether the defendant's actions fall within the scope of Pennsylvania's long-arm statue, 42 PA. CONS. STAT. ANN. § 5322(b).  Pennsylvania's long-arm statute permits the exercise of personal jurisdiction to the fullest limits of due process as defined under the Constitution of the United States, as such, federal law defines the parameters of the Court's *in personam* jurisdiction.  See id.; Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prods. Co., 75 F.3d 147,

150 (3d Cir. 1996).  Accordingly, in light of Pennsylvania's long arm statute, the court's proper focus will be on whether the exercise of jurisdiction comports with the United States Constitution's guarantees of due process.

To determine whether the court has personal jurisdiction under the Due Process Clause, the court must ask whether the defendant has certain minimum contacts with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (internal quotations and citations omitted).  Courts have identified two categories of personal jurisdiction–general jurisdiction and specific jurisdiction.  General jurisdiction is based on the defendant's "continuous and systematic" contacts with the forum.  See Helicopteros Nacionales de Colombia v. Hall, 466 U.S. 408, 416 (1984).  General jurisdiction exists even if the cause of action at issue arises from non-forum activities.  See N. Penn Gas Co. v. Corning Natural Gas Corp., 897 F.2d 687, 690 n.2 (3d Cir. 1990).  Specific jurisdiction on the other hand only exists "only if the plaintiff's cause of action arises out of a defendant's forum-related activities, such that the defendant 'should reasonably anticipate being haled into court' in that forum." Remick v. Manfredy, 238 F.3d 248, 255 (3d Cir. 2001) (quoting Vetrotex, 75 F.3d at

151).  In other words, specific personal jurisdiction is present when the

defendant's actions at issue in the case amount to sufficient minimum

contacts to satisfy due process requirements.  See Helicopteros Nacionales,

466 U.S. at 414-15.  The Third Circuit Court of Appeals observed with respect

to specific jurisdiction that "it is entirely possible that a court might have

personal jurisdiction in a particular case over a defendant but not have

jurisdiction over it in other cases."  D'Jamoos ex rel. Estate of Weingeroff v.

Pilatus Aircraft, Ltd., 566 F.3d 94, 102 (3d Cir. 2009).

Courts conduct a three-part inquiry to determine whether there is

personal jurisdiction, which was described by the Third Circuit Court of

Appeals as follows:

> First, the defendant must have "purposefully directed [its]
> activities" at the forum.  Second, the litigation must "arise out of or
> relate to" at least one of those activities.  And third, if the first two
> requirements have been met, a court may consider whether the
> exercise of jurisdiction otherwise "comport[s] with 'fair play and
> substantial justice.'"

Id. (internal citations omitted).  The first two steps in this three part inquiry

determine whether the defendant has sufficient minimum contacts with the

jurisdiction by assessing whether "'the defendant purposefully avail[ed] itself

of the privilege of conducting activities within the forum State, thus invoking

the benefits and protection of its laws.'"  Burger King Corp. v. Rudzewicz, 471

6

U.S. 462, 475 (1985) (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958)).

It is not necessary for the purposes of this requirement to show that the

defendant physically entered the forum state.  D'Jamoos, 566 F.3d at 103.

Nevertheless, the defendant's contacts must amount to "'a deliberate

targeting of the forum.'"  Id.  (quoting O'Connor v. Sandy Lane Hotel Co., 496

F.3d 312, 317 (3d Cir. 2007)).

     If the defendant can be shown to have personally availed itself of the

forum state, then the plaintiff must show that the litigation is related to at least

one of those purposefully directed contacts.  To meet this standard, plaintiffs

essentially have to show that the claims would not have arisen in the absence

of the defendants contacts with the forum state.  See O'Connor, 496 F.3d at

319.  Assuming that there is a showing of purposeful availment and

relatedness, the court must then assess whether its exercise of jurisdiction

would otherwise comport with "'traditional notions of fair play and substantial

justice.'"  Id. at 324 (quoting Int'l Shoe Co., 326 U.S. at 316).

     The plaintiff bears the burden of proving that the defendant purposefully

availed himself of the forum state.  The plaintiff must normally meet this

burden "through sworn affidavits or other competent evidence."  Time Share

Vacation Club v. Atl. Resorts, Ltd., 735 F.2d 61, 66 n.9 (3d Cir. 1984); see

also <u>Gen. Elec. Co. v. Deutz AG</u>, 270 F.3d 144, 150 (3d Cir. 2001) ("Once it is challenged, the burden rests upon the plaintiff to establish personal jurisdiction.").  However, courts treat the plaintiff's allegations as if they were true for the purposes of determining personal jurisdiction when no evidentiary hearing is held on the matter.  <u>See</u> <u>O'Connor</u>, 496 F.3d at 316 (citing <u>Miller Yacht Sales, Inc. v.  Smith</u>, 384 F.3d 93, 97 (3d Cir. 2004)).

**Discussion**

Primax seeks the dismissal of the third-party complaint on two grounds. First, Primax contends that this court lacks personal jurisdiction and that the case must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(2). Second, Primax avers that the third-party complaint must fail pursuant to Federal Rule of Civil Procedure 12(b)(6) as it fails to state a claim for which relief can be granted.  Leviton disputes Primax's claim that this court does not have personal jurisdiction, and Leviton asserts that specific personal jurisdiction exists pursuant to the "stream-of-commerce" theory.[1]  Leviton also maintains that the third-party complaint adequately states a claim.  For the following reasons, the court finds that Leviton, as the third-party plaintiff, has failed to meet its burden of establishing personal jurisdiction.  The third-party

---

[1] Leviton does not assert that this court has general jurisdiction over Primax.  (Doc. 35, Br. in Opp'n to Mot. to Dismiss Third-Party Compl. at 6).

8

complaint will accordingly be dismissed.[2]

## A. Stream-of-Commerce Theory

The stream-of-commerce theory has been used by courts "to find a basis for personal jurisdiction over a non-resident defendant, often a manufacturer or distributor, which has injected its goods into the forum state indirectly via the so-called 'stream-of-commerce.'" D'Jamoos, 566 F.3d at 104-05 (citing Pennzoil Prods., Co. v. Colelli & Assocs., 149 F.3d 197, 203 (3d Cir. 1998); Max Daetwyler Corp. v. R. Meyer, 762 F.2d 298-300 (3d Cir. 1985)). In Asahi Metal Industry Company v. Superior Court of California, 480 U.S. 102 (1987), the Supreme Court attempted to clarify the elements of jurisdiction under the stream-of-commerce theory, but a majority of the Court was unable to coalesce around a single approach. Two plurality opinions, each joined by four Justices, emerged. The first plurality opinion, authored by Justice O'Connor, found that something in addition to placing the product into the stream of commerce was necessary to establish personal jurisdiction, and that this additional conduct was needed to demonstrate an intent to serve the forum market. Id. at 112. Justice O'Connor explained that such "additional

---

[2] The court does not address Primax's arguments under Federal Rule of Civil Procedure 12(b)(6) as it is unnecessary to do so in light of the finding that the court lacks personal jurisdiction over Primax.

conduct" could include "designing the product for the market in the forum

State, advertising in the forum state, establishing channels for providing

regular advice to customers in the forum state, or marketing the product

through a distributor who has agreed to serve as the sales agent for the forum

State." Id.

The second plurality opinion, authored by Justice Brennan, took a less

stringent view of the stream-of-commerce theory than the O'Connor plurality.

Justice Brennan described the stream-of-commerce as follows:

> The stream of commerce refers not to unpredictable currents or
> eddies, but to the regular and anticipated flow of products from
> manufacture to distribution to retail sale. As long as a participant
> in this process is aware that the final product is being marketed in
> the forum State, the possibility of a lawsuit there cannot come as a
> surprise.

Id. at 117 (Brennan, J., concurring).  Under the standard espoused by Justice

Brennan, placing goods into the regular flow of product distribution with an

awareness of where those products would ultimately be sold is sufficient for

the courts to constitutionally exercise personal jurisdiction over the out-of-

state party.  See id.

Since Asahi, the Third Circuit Court of Appeals has not formally adopt

the approach described in either plurality opinion.  See D'Jamoos, 566 F.3d at

105 n.15 ("The two plurality opinions in Asahi, Justice O'Connor's and Justice

10

Brennan's, produced two distinct frameworks for the minimum contacts

analysis as it relates to stream-of-commerce theory, and we have not had

occasion to choose between the O'Connor and Brennan positions.").  Rather,

our circuit court of appeals applies both standards announced in the Asahi

plurality opinions.  See, e.g., Pennzoil Prods. Co., 149 F.3d at 207 n.11

("since we have not manifested a preference for either of the two standards,

the demands of clarity counsel us to apply both standards explicitly").

Recently, in J, McIntyre Machinery, Ltd. v. Nicastro, 131 S. Ct. 2780

(2011), a plurality of the Supreme Court once again addressed the stream-of-

commerce theory.  In Nicastro, Justice Kennedy authored a plurality opinion

that rejected the approach favored by Justice Brennan in Asahi.  Id. at 2788-

89.  The Nicastro plurality went on to adopt the more stringent view of the

stream-of-commerce theory advanced by Justice O'Connor's plurality opinion

in Asahi.  Id. at 2790.

Justice Breyer's concurring opinion in Nicastro was decided on much

narrower grounds.  Justice Breyer declined to adopt either standard

announced in Asahi.  Id. at 2791-92 (Breyer, J., concurring).  Instead, Justice

Breyer decided the case based on the Supreme Court's prior precedents.

See id. at 2792.  Although Justice Breyer did not agree with the Nicastro

plurality that a stricter rule was necessary, Justice Breyer nonetheless

cautioned against broad stream-of-commerce standards that would allow for

the assertion of "jurisdiction in a products-liability suit against any domestic

manufacturer who sells its products . . . to a national distributor, no matter

how large or small the manufacturer, no matter how distant the forum, and no

matter how few the number of items that end up in the particular forum at

issue." Id. at 2793 (Breyer, J., concurring).

In light of the failure of a Supreme Court majority to adopt clearly one of

the two Asahi standards, we will continue with the Third Circuit Court of

Appeals' approach.  Thus, we will consider whether Leviton, as the third-party

plaintiff, has met its burden with respect to either of the standards announced

in Asahi.

### B.  Personal Jurisdiction Over Primax Electronics

Leviton asserts that this court has specific personal jurisdiction over

Primax on the basis that its activities meet the elements needed to establish

jurisdiction via the stream of commerce theory.  The court disagrees.  Leviton,

as the third-party plaintiff, has failed to meet its burden of establishing that

this court has personal jurisdiction over Primax.[3]  Therefore, this case will be

---

[3] In assessing whether Leviton established a prima facie case of specific
personal jurisdiction, we examined the documents Leviton attached as

dismissed pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction.

Leviton asserts that it is proper for this court to exercise specific personal jurisdiction because "Primax knew its products were being shipped to, sold in, and used by individuals in the Commonwealth of Pennsylvania." (Doc. 40, Sur-Reply Br. at 2).  In support of this proposition, Leviton alleges facts and attaches supporting documents regarding Primax's exploitation of the United States market as a whole.  For instance, Leviton produces evidence indicating that Primax participated in litigation (both as a defendant and plaintiff) in California state court as well as the United States Court of Appeals for the Federal Circuit.  (See Doc. 35-4, Ex, C, Dockets & Pleadings). Leviton also provided evidence that Primax has had a sales office somewhere in the United States in 1990.  (See Doc. 35-5, Ex. D, Primax Co. Profile).  This evidence, although illustrative of Primax's attempt to cater to the United States market as a whole, is insufficient in itself to demonstrate that Primax purposefully availed itself of the Commonwealth of Pennsylvania.  See D'Jamoos, 566 F.3d at 104 (finding that the defendant's "efforts to exploit a

---

exhibits in support of its position as well as the allegations Leviton pled.  See Miller, 384 F.3d at 97.  The court will not consider statements of legal conclusions in examining whether personal jurisdiction exists.

13

national market necessarily included Pennsylvania as a target, but those efforts simply do not constitute the type of deliberate contacts within Pennsylvania that could amount to purposeful availment of the privilege of conducting activities in that state.").

Aside from evidence of Primax's exploitation of the United States market as a whole, Leviton proffers that it has produced two pieces of evidence that are dispositive on the issue of personal jurisdiction.  (Doc. 40, Sur-Reply Br. at 2).  The first piece of evidence consists of two docket sheets reflecting Primax's participation in litigation in Lehigh and Bucks Counties, in 2002 and 2003 respectively.  (See Doc. 35-4, Ex. C, Dockets & Pleadings at 9-19). Leviton offers these exhibits as proof that "Primax knew its products were delivered to, sold in, and used by residents in the Commonwealth, and thus could (and did) lead to lawsuits in the Commonwealth of Pennsylvania."  (Doc. 40, Sur-Reply Br. at 4).

Despite Levinton's assertions regarding the persuasiveness of the docket sheets from these prior cases on the issue of specific jurisdiction, the court is unconvinced.  Leviton does not demonstrate, or even allege, how these older state court cases are actually similar to the instant case.  The only similarity that the court is aware of is Leviton's allegation that the older cases

involved some sort of product that Primax manufactured.  The court does not

know what kind of product was at issue in these older case.  The court does

not know whether these older cases involved products distributed by Leviton.

The court does not know whether these products were purchased from a

Sears store or from another retailer.[4]  Most importantly, the court does not

know if the products at issue in these prior cases arrived in Pennsylvania

through the same channel of commerce in which the power tap subject to the

instant litigation arrived in Pennsylvania.

Given their relatively low probative value, the docket sheets attached as

Exhibit C do not establish that Primax was aware that it may be haled into

court in Pennsylvania in the future.  Primax's participation in Pennsylvania

state court litigation nearly a decade ago is not conclusive on the issue of

whether it would anticipate being haled into Pennsylvania again, years later,

for an accident involving unrelated products and a seemingly unrelated

distribution systems.  Thus, the court finds that merely attaching

documentation of prior, unrelated litigation in Pennsylvania state court is not

enough, in itself, to establish specific jurisdiction under either Asahi standard

as it provides little information about the product currently at issue.

_____

[4] The court notes that neither Sears nor Leviton are named parties in
the state court actions.  (See Doc. 35-4, Ex. C, Dockets & Pleadings at 9-19).

15

The second piece of evidence Leviton claims is dispositive on the issue of jurisdiction is a 2001 Purchase Order between Leviton and Primax.  (Doc. 35-6, Ex. E, Purchase Order).  The Purchase Order is for 14,600 units of four different products, which are identified by part numbers alone.  (Id.)  The Purchase Order reflects that Leviton has a California shipping address and a New York billing address.  (Id.)  Leviton asserts that this Purchase Order serves as evidence that Primax knew that "its products were being shipped to, sold in, and used by individuals in the Commonwealth of Pennsylvania." (Doc. 40, Sur-Reply Br. at 2).

The court notes, however, that Leviton has not identified which of the four products identified on the purchase order is the product at issue in this case.  There is no indication whether this was the only order between Leviton and Primax, nor does the Purchase Order reflect whether products were to be shipped into Pennsylvania.  The Purchase Order, while showing purposeful availment of the United States market as a whole, does little to demonstrate that Primax purposefully availed itself of Pennsylvania.

Leviton has not provided evidence or made allegations sufficient to establish that Primax's goods regularly flow through the stream-of-commerce into Pennsylvania.  As such, this case is distinguishable from other cases in

16

which the indirect shipment of thousands of products into the forum state was sufficient to establish personal jurisdiction under the stream-of-commerce theory.  See, e.g., Original Creations, Inc. v. Ready Am., Inc., No. 11 C 3453, 2011 WL 4738268 at *5 (N.D. Ill. Oct. 5, 2011) (finding personal jurisdiction where the defendant took "advantage of the clearly defined distribution network offered by" the distributors, which included at least 21 stores in the forum state); Merced v. Gemstar Grp., Inc., No. 10-3054, 2011 WL 5865964, at *4 (E.D. Pa. Nov. 22, 2011) (finding evidence that the defendants shipped products into the forum state on three occasions, and into at least three neighboring states on other occasions, as sufficient to establish purposeful availment).  In the instant case, Leviton has not alleged or provided evidence of its clearly defined distribution network into Pennsylvania stores.  In fact, Leviton has not even alleged how the power tap subject to the instant litigation arrived in Pennsylvania, and evidence that a few products made their way into the forum state, in itself, is insufficient to establish personal jurisdiction.  See Renner v. Roundo AB, No. 1-08-cv-209, 2010 WL 3906242, at *12 (W.D. Pa. Sept. 29, 2010).

Leviton has not met its burden of establishing that the subject power tap was in Pennsylvania as a result of the regular flow, as opposed to an

17

unpredictable flow, of the stream-of-commerce.  Leviton's allegations of fact

and accompanying evidence leave open the possibility that Primax was not

aware that the power tap at issue in this case was sold in Pennsylvania.

Leviton has failed to establish that Primax exploited the Pennsylvania market

through a defined distribution network, as such, the court cannot find that

Primax purposefully availed itself of the Pennsylvania market in a way that is

related to the instant litigation.  In fact, ruling that this court can exercise

personal jurisdiction over Primax would amount to the type of broad stream-

of-commerce rule Justice Breyer cautioned courts to avoid.  <u>Nicastro</u>, 131 S.

Ct. at 2793 (Breyer, J., concurring).

Thus, for the above-stated reasons, the court finds that Leviton has not

satisfied its burden with respect to either standard announced in <u>Asahi</u>.  In

light of this conclusion, it is not necessary for the court to consider whether

the assertion of personal jurisdiction over Primax "would comport with 'fair

play and substantial justice.'"  <u>See</u> <u>D'Jamoos</u>, 566 F.3d at 106.

18

**Conclusion**

The court will dismiss the third-party complaint pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction.  Defendant / Third-Party Plaintiff Leviton Manufacturing Company has failed to satisfy its burden with respect to establishing that Third-Party Defendant Primax Electronics purposefully availed itself of the privileges of conducting activities in the Commonwealth of Pennsylvania.  An appropriate order follows.

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MICHAEL SIEG and** | : | **No. 3:10cv606** |
| **DEANNA SIEG,** | : | |
| **Plaintiffs** | : | **(Judge Munley)** |
| | : | |
| **v.** | : | |
| | : | |
| **SEARS ROEBUCK & COMPANY** | : | |
| **and LEVITON MANUFACTURING** | : | |
| **COMPANY,** | : | |
| **Defendants** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **PRIMAX ELECTRONICS, LTD.,** | : | |
| **Third-Party Defendant** | : | |

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## ORDER

**AND NOW,** to wit, this 24th day of February 2012, Third-Party Defendant Primax Electronics, Ltd's motion to dismiss (Doc. 31) is hereby **GRANTED**. Third-Party Defendant Primax Electronics, Ltd is **DISMISSED** from the case.

**BY THE COURT:**


s/ James M. Munley
**JUDGE JAMES M. MUNLEY
United States District Court**